You are fortunate, counsel, you get the opportunity to argue the very first case before Circuit Judge Reyna. We are honored that he is celebrating his first day on the bench with us. And so, without any further ado, our first case is P.S. Chez v. USITC. Mr. Gallagher, are you going to speak first? Is that my understanding? Excuse me, Mr. Jordan. Okay. Didn't quite have this figured out. It's a little confusing procedure, Your Honor. Yes, it's backwards from what it usually is. Mr. Schor, you may proceed. Good morning. Thank you, Your Honor. My name is Michael Schor from Arnold and Porter on behalf of Plaintiff P.S. Chez Sidney. I'd like to focus my remarks this morning on two questions. First, whether after SKF and the Supreme Court's recent decision in Sorrell, the Byrd Amendment can still be construed as requiring as a threshold eligibility condition that domestic producers publicly express the viewpoint that they support the petition by checking off a specific box in response to a single question on the ITC questionnaire. The second question is, if so, whether Chez Sidney met that requirement by checking off the support box in its October 1996 preliminary phase questionnaire. You're not relying on whether the requirement was met simply by participating in answering the questionnaire? That would be our first argument. Our position, Your Honor, is that the viewpoint-based expression questionnaire, checking off the box support, is out as an eligibility condition and that we qualify by virtue of having completed and fully answered the questionnaire. That was a preliminary questionnaire, wasn't it? It's not a preliminary questionnaire. The final one you didn't want to play. There are two phases in an ITC investigation. There's a preliminary phase and a final phase. It is not preliminary in the sense that you get to answer again later. There are two separate phases, and for the petitioners to prevail in getting duties assessed, they must prevail in both phases separately. So each one stands on its own. Were there answers? Excuse me. Just to complete the thought, were there any answers provided in the repeat questionnaire? Yes. We believe the ITC hasn't given us the final questionnaire or the preliminary questionnaire. We believe Shea Sidney fully answered both the preliminary and the final questionnaire. On the preliminary questionnaire, they expressed the viewpoint that they supported the petition. In the final phase questionnaire, they expressed the absence of a viewpoint. They took no position. You haven't seen the final questionnaire? They haven't given it to us, no, Your Honor. They took a very limited view of the record, that the only thing that was relevant was the one question, and that's all they put on the record. Apart from the following the questionnaire. And you didn't keep a record yourself? No, no, we did not. Okay. Excuse me. Apart from following the questionnaire, did you participate at the hearing? Did not participate at the hearing, no. Did you file post-hearing briefs or preliminary briefs? Did not retain counsel. Shea Sidney did what most of the individual crawfish producers did that were not part of the Crawfish Processors Alliance. All they did was complete the questionnaires. And that's all? That's all. I might add that Shea Sidney was involved in the organizing effort of the petition, but this is not information that's on the record because it wouldn't be on the record. There are two groups competing to file a petition, and Shea Sidney was a member of one and not the other, and the other filed the questionnaire. This case really turns, Mr. Schor, on what does support mean. Why wouldn't we defer to the ITC on that? This is a statute which they administer, and they made it quite clear that failure to support throughout and marginal support at any point was not enough. Why wouldn't we defer to that? Two reasons, Your Honor. First, because of the First Amendment issues involved in this case. The ITC, unlike a federal court, has no authority to rule on the constitutionality of a statute. Well, I think that's behind us, isn't it, with SKF? In application. I think SKF ruled that you can't base a government subsidy decision solely on the viewpoint expressed on whether you support particular government action. So I think the court... Let me make my question again. Okay. Why don't we defer to the ITC's interpretation of support? Two reasons. First, under the statutory standard of review in 5 U.S.C. 706, you do not defer to agency's statutory interpretation. You decide statutory questions yourself. Second, as the court held in Cathedral-Candle, Chevron deference does not apply in these types of cases because of the lack of formality and rigor in the agency decision-making process under the test the Supreme Court articulated in Mead. Third, you're left with Skidmore deference. You defer to an agency interpretation only if they provide adequate reasoning as to how they construe the support requirement. Here, they've told you they didn't construe the support requirement at all. They viewed this as a factual question as to which box governed, and they just decided that it was the last one in time. So they did not purport to construe the statutory term support. The court had to construe support as not being met by your partial efforts on the first and no efforts at all on the second question. Not partial efforts. Full efforts on the first questionnaire. We checked off the box support, and we fully answered the questionnaire. Well, and it doesn't sound to me like a very vigorous effort to… You said all that is required is that you check off the box. All that's required is to fully complete a questionnaire. That's what footnote 26 said. It said more. It talked about the need for some kind of vigorous support and then said that may marginally qualify. Well, I can say this, Your Honor. In this case, there are petitioners, there are domestic producers who received benefits that did far less than Chase and me. There are at least three petitioners. There are at least three companies that answered the first questionnaire with the support and did not answer at all the second questionnaire. Is that on the record? If they would put it on the record, but it is on the record of the underlying proceeding. Okay. But is it in the record before this court? You know, there is no record before the court. All they put on the record was the… This case came up on a First Amendment challenge like SKF. In SKF, there was no real record before the court. The court found it necessary to have the clerk ask for documents after the case, and you may do the same here. But I don't think the ITC disputes that there were three companies that didn't respond at all to the second questionnaire, received benefits. There was another, did the same thing as Chase and me, except instead of checking off the box, take no position, they left the question out entirely. So they took no position. Instead of stating they took no position, they are receiving benefits. If you had not responded at all in the final phase of the investigation and just had your preliminary response… We would be getting benefits. That's contrary to the purpose of the statute as this court construed in SKF as rewarding those who assist government enforcement efforts. It creates an incentive if you change your position not to say anything and not to give the government the information it needs in the final phase questionnaire. In SKF, this court addressed the extent of support to the litigation that parties would bring. What's your extent to support? What did you bring to the litigation table? Well, I think in SKF, the court addressed all of the factors that SKF did to oppose the case. They pointed out that SKF counsel presented alternative analysis of ITC data, that they provided factual evidence to refute the petitioner's case, that they submitted an economic analysis, that they presented expert testimony against the petition, and even went so far as to introduce the testimony of other executives of other producers in the proceeding as evidence opposing the petition. There's no dispute that Chase and me took no actions to support, to oppose the petition. The actions they took to support the petition were to provide complete answers to the questionnaire responses, and to the extent it's still allowed to be considered as a factor. They checked off the box support in the first questionnaire. They aligned themselves with the petitioners. So where the statute says, by letter or through questionnaire response, if in fact Chase Sidney had written a letter saying, I support this proceeding, but I refuse to respond to the questionnaire, is there a sense that that would have been in requirement and compliance with the statute? Under the language of the statute, yes. Under SKF decision, I'm not so sure. I think SKF requires. See, SKF, I believe, recognized that when one says, I support particular government action, or I support the President's economic policy, or I support the war in Afghanistan, that's an abstract expression of viewpoint on a public policy issue that's protected by the First Amendment. And they said, that can't be the basis for awarding a subsidy. So they said, we construed the statute, and this is a direct quotation, quote, to reward actions, litigation support, rather than the expression of particular views. That's our position in this case, that you must construe the Byrd Amendment as rewarding actions, because actions are not protected by the First Amendment. In technical terms, under the First Amendment, the distinction has to be between expressive activity and non-expressive conduct. Whether you support or oppose government action is expressive activity. And under the First Amendment, the government cannot burden that through the denial of a subsidy. But you did take action in this case. You checked a box that said that you do not, you take no position in the fund investigation. You made that deliberate choice. Why do you claim today that that's not an action? Because that's expressive conduct. The distinction under the First Amendment is between expressive activity and non-expressive conduct. Just as in Barrett v. State Board of Arizona, the state cannot deny you a bar license. They can't deny you a benefit on the basis of your expression of protected expression. That's black-letter First Amendment law. That's why this court went out of its way to have a saving construction and a limiting construction on the petition support requirement, to say we're going to construe it as rewarding actions, like in key TAM cases. But, Kelsey, you can't rely on having checked the box in the one instance. I'm not relying on checking the box at all. No, I don't want to rely on checking the box at all. I think it's a dangerous precedent to say that we're going to award you a benefit based on your subjective viewpoint, because it changes. People change their viewpoints all the time, and it provides an unreliable basis, not only an unconstitutional basis,  but our position is you can't look at that questionnaire at all. I'm sorry. You can't look at that particular question at all, the petition support question. You have to look at the conduct as a whole of the party in the case to see if they supported the petitioners or they opposed, and you can award based on non-expressive conduct alone. Would you like to save your rebuttal time, Mr. Schor? I would. Thank you very much, Your Honor. Now, Mr. Gallagher, I think. I've got it right this time, right? Yes, sir. Good morning, Your Honor. Patrick Gallagher on behalf of the United States International Trade Commission. As we stated in our papers, this appeal presents the court with a very simple question. Did the commission act reasonably when it concluded pursuant to the Byrd Amendment's petition support provision? But how do you get around the statement or in the statute of responding to the questionnaire or express support for a petition by letter or through questionnaire response? If someone just wrote a letter and said, I support what you're doing, but I'm not going to answer your questionnaire, it's burdensome. There we are. The statute on its face is met, but that can't be the policy that that statute was supposed to implement. It does not appear, Your Honor, from post-SKF, this court's decision in post-SKF, that a letter alone would be sufficient. What does active support mean? Active support. The SKF court didn't hold that it had to be active support. The SKF court held that there had to be active participation in addition to the statement of support through letter or questionnaire response. That was the saving construction. That's what SKF court was trying to do. Save what? What is this construction intended to save? It was intended to save the requirement in the statute for an indication of support by letter or through questionnaire response. That's what it was intended to save. And then what is required beyond that then? Beyond that is the limiting part. Once a party has expressed or indicated its support, the limiting part of the construction was there has to be some sort of active participation. In SKF, the court found that the provision of questionnaire responses was sufficient to meet that criteria of active participation. If the purpose of the statute is to reward parties who actively support or actively participate to initiate or support a petition that leads to an investigation to provide an anti-dumping or countervailing duty order, then the court in SKF stated that was the purpose of the statute. Okay, but it bothers me. For the first questionnaire, Shea Sidney fully completes it and checks the box, says I support what you're doing. For the second questionnaire, we're told they fully complete it. So they tell us they fully completed it, but on the box says I take no position. Aren't they really saying we don't know whether they're dumping or not? And so they're not drawing a legal conclusion. They don't say we're against you. They provided the information. And the statute says or. And this is what I'm trying to decipher as to the facts in SKF where it was significantly different. And whether there are lines to be drawn, whether there are presumptions against the petitioner for despite having provided all of the requested information, as has not been denied, they declined to draw a legal conclusion and say we support your action. They didn't say we don't support the action. They just said we don't know. We take no position. Yes, Your Honor. But the statute is very clear about there's two classes. There is those who support and everyone else. The statute rewards, is intended to reward. It's stated in the court's decision in SKF at 1352. The purpose of the statute is to reward parties who initiate or support. Who initiate, who provide information. And the legislative history, I think, is quite clear, is that it's to encourage the provision of information so the government can do its job. The court addresses that type of response in the decision at 1359. Where it discusses the opposers and the neutral parties, the so-called neutral parties, how they are required, for instance, in a quid tam case, to provide information. Even if they don't wish to participate in the proceeding, even if they don't support the proceeding, they are required to provide information. But now, all right, let's focus on that. Because everything that I can tell, the most logical reading, is that the support that's intended by the statute is the provision of information. Not also to act as a cheerleader and say, you know, good work, United States. Perhaps, Your Honor. But it would seem that the plain language of the statute is letter or questionnaire response. So you could have only provided a letter and no other information. And you think that that would meet the statutory requirement? If Shea Sidney wrote a letter and said, I support what you're doing, but you're not going to get any information out of me. It would have before SKF. It wouldn't after SKF. And the difference with SKF is, SKF implemented the saving construction in order to save the petition support requirement. So the provision of information is in addition to the statement of support. Even though the statute says or? Will you sit here and rewrite the statute? Yes, Your Honor, even though the statute says or. So if PSJS had not checked, just left completely blank the boxes, is it your position that they still would not be eligible for burn money? They filed the questionnaire, just to understand your hypothetical. They filed the questionnaire, but they did not check the boxes. It's not an indication of support. On the final? On the final. Right. It would depend. It's hard to answer a pure hypothetical. It would depend on the surrounding circumstances. But for those sorts of things, the staff usually follows up. Okay. Did you use the information provided by PSJS? PSJS did, yes, Your Honor, in both the preliminary and the final determination. So you took the information they provided and used that to reach your final material injury determination? Yes, including their statement of take no position. Now, to me, take no position at the initial stage really means something because you have to build a certain level of support for a petition. What does it mean in the final stage of the investigation? Why is that important to you? My time is run, Your Honor. May I answer? Please, please respond. The final questionnaire is actually the more important questionnaire than the preliminary questionnaire because in the final questionnaire, the data that is contained in those questionnaires is the data that the commission uses to make its final determination. Its final determination is the one that will drive whether there is an order or not. If the commission goes affirmative in the final, there will be an order. If the commission goes in affirmative in the prelim, then you're going to have a final phase investigation. But the final phase is where the commission makes its ultimate decision that will lead to the order or not. So when they get my ask... No, please, please, please, sure. So when they say we take no position on support, does that mean you then discard the information in the questionnaire? No, Your Honor. But that is part of the commission's consideration about whether there should be an order is their take no position, that they are not a supporter of the petition. They didn't object to the petition? We don't know if they're dumping or not. Here's the information you asked for. Yes, Your Honor, but either they're a supporter or they're not, and that goes to another question. The information is used to determine whether the industry as a whole is injured, including the take no position part. Yeah, please. So when you say you use the information that they supply, did you count it against the industry then? Against a material injury determination? No, no, no. So did you count it in favor? It's not a count in favor or count against. It's part of the mix that the commission uses to determine whether the subject imports are injured. So regardless of what box they check, you would have used their information in the same manner during the final phase? For the purposes of determining material injury to the domestic industry, but there is a component of that that the commission considers whether the parties or whether the domestic industry supports or not the petition. That's all part of the decision. The actual injury determination uses that data, yes. But there is a separate determination made about whether the industry as a whole supports or does not support the petition. Thank you, Mr. Gallagher. Mr. White? May it please the Court, Your Honors. Franklin White for United States Customs and Border Protection. I want to go right back to the fundamental problem that we have with Shea Sidney's case here, and that is essentially that they have completely misread what this Court's decision in SKF is about and what it means. The fundamental determination that was made in the SKF case was that the support requirement, which was challenged as being unconstitutional under the First Amendment, was not unconstitutional. The saving, limiting construction, or whatever you would want to call it, means precisely what it says and nothing more than that. They've twisted it around to the extent that they believe that this support is essentially somehow participating in the ITC material injury investigation and providing information in response to questionnaires. That's not what was intended. The support requirement, meaning having checked the box for support or provided a letter indicating support, was sustained. But what the Court held was that in a circumstance where a party simply tries to hedge all bets, receives a questionnaire from the ITC, checks the box saying, do you support this petition, and does nothing else, should not be seen as the prevailing plaintiff, to use the litigation analogy that the SKF decision used, that Congress intended to reward. What is the interest of your agency in this constitutional issue? Well, the Customs, in the way the Byrd Amendment is administered, it's a division between the ITC and the Customs and Border Protection in administering that. It is true that the ITC makes that determination of the list of affected domestic producers, but Customs is actually the party that is responsible for making these distributions, and in this case and in other cases pending in the Court of International Trade. But you don't review with an opportunity to negate or veto the decision of the Commission? No. The Customs relies on the determination of the Commission in these cases as to whether the party is an ADP because the statute specifically directs that decision to the ITC. It specifically states in subsection D of the statute that the ITC will determine by reviewing its records and looking for those producers who had supported the petition through questionnaires and letters. That's a matter for the ITC to determine, and after they have determined that, Customs makes other determinations regarding whether or not there were qualifying expenditures by the party that would entitle that party to a share of a distribution and whatever divisions there need to be among producers. In this situation, your agency did exactly that. They reviewed a petition, and you determined that their pro rata share at that time was somewhere in the neighborhood of $1.6 million. In response to the original determination of the CIT in this case, which held that the statute was unconstitutional, Customs on remand did make a determination for the fiscal year 2002 and 2003 distributions, and I believe the figure that your Honor is referring to is correct. It would be stated in the remand decision. So making that decision is the extent of your agency's participation in this process. Yes, but because we are representing also the United States, as well as United States Customs and Border Protection in these cases, we have been taking the lead in arguing the government's position on the constitutionality of the statute, and we did so in the SKF decision. And getting back to my argument was that... What happens if we find that their one indication of support is sufficient and they're entitled to over a million dollars? Where will that come from? It would end up coming from the special account. There is a special account which is currently still accumulating the liquidated anti-dumping and countervailing duties on various borders. And in this particular case, as entries are being liquidated, money that is currently in clearing accounts that Customs maintains while those entries are still based on estimated duties, those funds enter into the special account. And if Shea-Sydney was successful in the case, that's where the additional money would come from. The next distribution, that special account would be reduced by an amount which was commensurate with the amount that Customs said would be owed to Shea-Sydney. So your testimony is that the money is available? Should it prevail? Well, I can't say definitively. I don't know what the current balance is in a special account at any particular time. But we have no reason to believe. The amounts are very high, at least at the time were very high. For example, the $1.5 million roughly that Shea-Sydney share of was a very small amount. It might have been 7 percent of the special account in one year and 6 percent of the special account in another year. So the special account, which I'm sure is being diminished, is still probably far larger than this amount of money. So that distribution would be made to Shea-Sydney, and that special account being reduced, the amounts that would be distributed through the normal 2011 distribution to other affected domestic producers would be reduced by that amount. Thank you, Mr. Shor. Your Honor, I see my time is expiring. Yes. Mr. Shor, you have a little less than four minutes. I think there's one more speaker on the other side. All right. Thank you. Your Honors, I wish I had three hours. How many times I've told you guys not to split it up two ways, and you split it up three ways? I felt lucky to get three minutes. Yes, well, it's ticking. I'm here with Bill Leonard, also present but not at the table. We represent the Crawfish Processors Alliance, and we are the people who built the train and laid the tracks and the caboose on which Shea-Sydney now wishes to ride. We are the people. When an anti-dumping order is issued and the imports are now subject to the anti-dumping duties, isn't that relief that's provided by the anti-dumping duty order applicable to the entire industry? That is correct, Your Honor. Doesn't the ITC define industry by the like-product standard? Yes. And in this case, wouldn't Sydney Shea be part of the as a crawfish producer and one that's affected by the imports, as determined by the ITC, and one that's protected and afforded relief under the anti-dumping duty order, wouldn't they be part of the affected industry? Well, they get the relief of the order, and that has always been the case prior to the Byrd Amendment. There were always free riders, but as someone who has organized anti-dumping petitions, not this particular one. It was a little before my personal time in it. But the hardest thing is to get the industry organized. There will always be people who don't want to pay. There will always be people who don't want to take a position. They don't want to offend importers. You know that. And they will end up getting the relief that you work for. One of the biggest issues, is it not, in organizing a case is the amount of support that the industry would afford you. And did not Sydney Shea indicate that they supported the petition? Shea Sydney had the, first of all, to correct a misstatement, the claim was made that they were part of the organizing effort. Shea Sydney was never part of the Crawfish Processors Alliance. They may have been involved in some earlier group, I don't know. But they were never a member of the CPA. So, support in this context doesn't mean, do you have a conclusion about the dumping law and whether there is dumping. It means, are you on board in this action? Are you part of the group of people that wants relief? Doesn't it mean providing information? Everyone is required to provide information to the US ITC. The ITC has subpoena power if they want to use it. I've seldom seen it used. In fact, I'm not sure I've ever seen it used. But it's, in terms of providing information, everybody does the same thing. But for purposes of standing, to even initiate a petition, to establish that threshold of standing, you have to have an indication from the members of the industry whether they support the petition or not. That is correct. And did not, in this case, indicate that they supported the petition? Not at the initiation stage. They supported later. They checked the box that said, yes, we support. But the problem is that in the later questionnaire response, they said, well, yes and no. To someone who just said yes, you're okay. They said no position. They said no position. And that's where the confusion is. If they had just said yes and then held their peace, you wouldn't have this conflict between their statements. Had they said nothing at all, what would be the outcome in your view? I think if they'd said nothing at all, they'd be in a much better position. But having said take no position, affirmatively stated we are not saying yes, we support, then they put the ITC in the position of having to weigh one answer against the other. The ITC took the later one. Thank you, Mr. Steinberg. Now, before you sit down, you had a dispute with our clerk's office over the admissibility of your brief. And my reports on your behavior urge me to counsel you to deal more politely, particularly with our clerk's office. Would you make that effort in the future? Thank you, Your Honor. Yes, sir. And if we have another incident, then you may get an opportunity to talk to me again. Very good. Thank you. Thank you, Mr. Steinberg. And now, Mr. Schor, I think we get a little less than four minutes from you. Thank you, Your Honor. I ask the court to keep one question in mind. Why did the SKF court find it was unconstitutional to award a subsidy solely based on checking off the support box? The ITC's position makes no sense. An unconstitutional condition is unconstitutional as a sole condition or as one condition among many. It cannot be the case, then, that the court found it unconstitutional to rely solely on the support question but constitutional when they also actively participated. It has to be that the support condition itself is unconstitutional. And here we have the exact flip side. Just as it is unconstitutional to award a benefit to someone who did nothing more than check off a box, expressing their viewpoint on a matter of public policy, it also must be unconstitutional to deny a benefit to Shea Sidney solely based on the box. Counsel, I believe that the constitutional issues are outside the scope of what we have. I'd like for you to address some questions under SKF and go back to the amount of participation that Sidney Shea had in the investigation in addition to the organizing support. That's out of the record. You mentioned that. Go to the information on the record and indicate the amount of support, the amount of participation and support for the investigation is the same as every other non-petitioner. Again, there are two classes of beneficiaries under the CDSOA as written. There are the petitioners and those that indicate support by questionnaire response. There's no question petitioners do more. They initiate the case. They typically supply witnesses at the hearing. Most other people who support petitions do nothing more than complete the two questionnaire responses. And here Shea Sidney did more than other parties that are receiving benefits because they did answer two questionnaires fully, not just once. It has to be the case that Congress intended the benefits to be provided to more than just the class of petitioners. The other participants typically do nothing more than fully answer questionnaires. And Judge Newman, I think you have it exactly right. Support has to be providing information. That's what makes these cases analogous to key TAM cases, to government reward cases. When somebody answers the FBI list and turns in a criminal and assists in the conviction, that's constitutional and doesn't raise a First Amendment issue because all they're doing is providing information. A relator in a key TAM case under the statute, they have to substantially contribute to the prosecution of the action. That's non-expressive conduct. It's providing information. It's okay under the First Amendment. You cannot define a benefit. You cannot provide a substitute. In these investigations, the ITC's questionnaire responses or questionnaires are mandatory. The parties who receive them are required by law to provide a response. Actually, I don't know the answer to that question. I think once the ITC gets a subpoena, they're required to answer. But as you know, Judge Raynor, because I've worked in cases opposite you many times, not everybody answers questionnaires. So even though they may be required to and they can be compelled through a subpoena, but it is typically the case that many parties do not answer questionnaires. But the commission is required by law or in this situation to determine which parties are eligible or not, and they devise a system of doing this. They use their experience in order to come up with a system and forget the constitutional issue. I'm talking about the subpoena. That's not what they did here. All they did here is look to see if they checked off the box because that's all they put on the record. Why shouldn't that be enough? Because it's an expression of viewpoint, and that's protected by the First Amendment. They have to base this determination on non-expressive conduct, and that's what the court held in SKF. They said it's not enough to just look at the questionnaire. It's not enough to just look at it in awarding the benefit, and it's not enough to just look at it in denying a benefit. That's what SKF held. Thank you, Mr. Schor.